# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2017–04**

————————————

**James W. RICHARDS, IV**
Lieutenant Colonel (O-5), U.S. Air Force, *Petitioner*

**v.**

**Deborah Lee JAMES**
Secretary of the Air Force

**Brian S. GREENROAD**
Colonel (O-6), United States Air Force
Commander, Air Force Security Forces Center

**D. L. HILTON**
Colonel (O-6), United States Army
Commandant, United States Disciplinary Barracks
*Respondents*

————————————

Review of Petition for Extraordinary Relief in the Nature of
a Writ of Mandamus

Decided 19 October 2018

————————————

*Military Judge:* Mark L. Allred.

*Approved sentence:* Dismissal, confinement for 17 years, and forfeiture of all pay and allowances. Sentence adjudged 21 February 2013 by GCM convened at Tyndall Air Force Base, Florida.

*For Petitioner:* Lieutenant Colonel Nicholas W. McCue, USAF; Lieutenant Colonel Shane A. McCammon, USAF.[1]

*For Respondent:* Colonel Katherine E. Oler, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

---

[1] Petitioner's initial petition was filed pro se.

Before MAYBERRY, HARDING, and MINK, *Appellate Military Judges*.

Senior Judge HARDING delivered the opinion of the court, in which Chief Judge MAYBERRY and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

Petitioner submitted a Petition for Extraordinary Writ in the Nature of a Writ of Mandamus alleging that Respondent's calculation of Petitioner's good conduct time (GCT) confinement credits violates Article I, Section 9, Clause 3 of the United States Constitution—the *Ex Post Facto* Clause. To remedy the alleged *ex post facto* application of the rule for GCT calculations, Petitioner requests that this court issue a writ of mandamus ordering Respondent to calculate his GCT credits in accordance with a prior and more favorable rule. For the reasons set forth below, we deny the petition.

## I. BACKGROUND

Contrary to his pleas, Petitioner was convicted of one specification of possession of child pornography and five specifications of indecent acts with a male under sixteen years of age, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934; and four specifications of failing to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892. Important to the resolution of this petition for relief, the earliest of Petitioner's offenses were committed by him on or about 10 June 2005. On 21 February 2013, a military judge, sitting alone, sentenced Petitioner to a dismissal, seventeen years confinement, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence. This court affirmed the findings and sentence. *United States v. Richards*, No. ACM 38346, 2016 CCA LEXIS 285 (A.F. Ct. Crim. App. 2 May 2016) (unpub. op.), *aff'd,* 76 M.J. 365 (C.A.A.F. 2017), *cert. denied,* ___U.S.___, 138 S. Ct. 2707 (2018).

On 26 March 2013, Petitioner was transferred to the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas. Petitioner's Minimum Release Date (MRD), as determined by USDB officials on 1 July 2015, is 1 January 2026. Petitioner's MRD was determined in part by the application of GCT credits to his sentence to confinement at a rate of five days per month. Petitioner contends that using the rate of five days per month was an *ex post facto* application of a rule changed after the dates of his offenses and

2

adjudged sentence. Petitioner asserts that his MRD should have been determined by using a GCT rate of ten days per month. As the effective dates of the military regulations establishing and changing the rules for GCT calculations are essential to evaluating Petitioner's claim, we will briefly trace the history of Air Force policy on this matter.

In 1964, the Air Force issued Air Force Regulation 125-30, *Apprehension and Confinement, Military Sentences to Confinement* (6 Nov. 1964) [retitled Armed Forces Joint Instruction (AFJI) 31–215, *Military Sentences to Confinement* (1964)], which directed GCT for sentences adjudged on or after 31 May 1951 at a rate of [t]en days for each month of the sentence for a sentence of 10 years or more, excluding life." *Id.* ¶ 13.

In 2001, the Department of Defense (DoD) issued Department of Defense Instruction (DoDI) 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority* (17 Jul. 2001). This issuance provided in pertinent part that for sentences of ten years or more, prisoners would receive ten days of credit for each month of the sentence served. *Id.* ¶ E26.1.1.5. This instruction applied to all DoD components to include the Department of the Air Force. *Id.* ¶ 2.

In 2004, the Air Force issued Air Force Instruction (AFI) 31–205, *The Air Force Corrections System* (7 Apr. 2004), which governed confinement and sentences in the Air Force. For the determination of GCT, the Air Force implemented DoDI 1325.7 as follows:

> The accurate computation of inmate sentences ensures proper administration. It is also an essential element in protecting inmate legal rights. The confinement officer or designated corrections staff member computes sentence and Good Conduct Time (GCT) according to DoDI 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority* and AFJI 31–215, *Military Sentences to Confinement*.

AFI 31–205, ¶ 5.7.

On 23 June 2004, a little over two months after the issuance of AFI 31–205, the Under Secretary of Defense for Personnel and Readiness (USD (P&R)) issued, a directive-type memorandum (DTM), *Change to DoD Policy on Abatement of Sentences to Confinement,* amending DoDI 1325.7. Under this DTM, GCT would "be awarded at a rate of 5 days for each month of confinement . . . regardless of sentence or multiple sentence length." *Id.* ¶ A2.2.1. This change applied only to findings of guilt for offenses which occurred after 1 October 2004, when the DTM became effective. *Id.* ¶ A2.2.2.

On 17 September 2004, the USD (P&R) released another DTM, *Clarification of DoD Policy on Abatement of Sentences to Confinement*. This September

DTM clarifies paragraph A2.2.2. from the June DTM by amending it as follows: "[w]ith respect to sentences adjudged prior to January 1, 2005, GCT shall be awarded at the rates specified in DoD Instruction 1325.7, enclosure 26"—a rate of 10 days per month for sentences of 10 years or more. This change would be incorporated in the next version of DoDI 1325.7. *Id.*

In March 2013, the DoD reissued DoDI 1325.7 as DoDI 1325.07, *Administration of Military Correctional Facilities and Clemency and Parole Authority* (11 Mar. 2013). The reissued DoDI superseded and cancelled the two USD (P&R) DTMs issued on 23 June and 17 September 2004, but maintained the rule that prisoners whose sentences were adjudged after 31 December 2004 would earn GCT at a rate of five days per month. DoDI 1325.07, Enclosure 2, Appendix 3 ¶ 2.b.(2).

In June 2015, the Air Force issued AFI 31–105, *Air Force Corrections System* (15 Jun. 2015), which superseded AFI 31–205, dated 7 April 2004, and contained specific provisions for sentence computation and GCT calculations:

> For sentences adjudged on 26 Jul 2004 or before, contact the USDB or AFSFC/SFC [Air Force Security Forces Center, Corrections Division] where copies of the AFJI 31–215, Armed Forces Joint Instruction, *Military Sentences to Confinement*, dated 1964 are maintained for those under its jurisdiction. For sentences adjudged on 27 Jul 2004 or after, IAW DoDI 1325.07, use DoD 1325.7-M, *DoD Sentence Computation*, Chapter 2, to calculate sentences. In either case, use the DD Form 2710–1, *Inmate Sentence Information*, or a computer-generated equivalent to show math work on sentence calculations.

> NOTE: The paragraphs contained in 5.6.1. – 5.6.8.1.4. below provide a quick reference to the format. For more in depth information, refer to the DoDI and DoDM [DoD Manual] which take precedence.

*Id.* ¶ 5.6.

AFI 31–105 continues: "GCT is awarded at a rate of **5 days** for each month of confinement, and for that portion of any sentence to confinement not expressed in full years and months (1 day for each 6-day portion of a month, see Table 5.1.), **regardless of sentence** or multiple sentence length." *Id.* ¶ 5.6.2.3.

As noted above, Petitioner's MRD was calculated on 1 July 2015 using the GCT rate of five days per month for each month of confinement. In calendar year 2016, Petitioner variously requested that the Commander of the Air Force Security Forces Center, the Commander of the Air Force Installation and Support Center, and the Air Force Clemency and Parole Board grant him

relief from what he asserted was an inaccurate calculation of his GCT. Petitioner's requests, whether presented as an Article 138, UCMJ, 10 U.S.C. § 938, complaint, or a clemency request, were uniformly denied.

## II. DISCUSSION

At the outset we note that Petitioner does not directly challenge the legality or appropriateness of his approved sentence in this petition. Rather, as he did in his requests to other Air Force authorities on this matter, he takes issue with the calculation of his MRD by prison officials using a GCT credit rate of five days per month instead of ten days per month. As the issue Petitioner raises concerns a matter not directly connected to the legality or appropriateness of the approved sentence, we must first determine whether we have jurisdiction to review this petition for an extraordinary writ.

### A. Jurisdiction

Jurisdiction is a question of law we review de novo. *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017) (quoting *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013)).[2] "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015) (citation omitted).

---

[2] In addition to arguing that military courts do not have jurisdiction to review GCT matters on direct review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and thus do not have authority to issue extraordinary writs for GCT matters, the Respondent raises two additional jurisdictional bases to dismiss the petition. Citing to *Moore v. Akins*, 30 M.J. 249 (C.M.A. 1990), Respondent posits that this court does not have jurisdiction to address this writ while the case is pending at the United States Court of Appeals for the Armed Forces (CAAF) or the United States Supreme Court. We note that as of 13 July 2017, Petitioner's case was no longer pending at CAAF, and on 28 June 2018 the United States Supreme Court denied certiorari. Citing to this court's opinions in *Chapman v. United States,* 75 M.J. 598 (A.F. Ct. Crim. App. 2016), and *Sutton v. United States,* ___ M.J. ___, Misc. Dkt. No. 2018-01, 2018 CCA LEXIS 349 (A.F. Ct. Crim. App. 13 Jul. 2018), the Respondent argues that since Petitioner's court-martial has completed direct review under Article 71, UCMJ, 10 U.S.C. § 871, and as of 27 August 2018—the date the Secretary of the Air Force ordered Petitioner's dismissal executed the case is final under Article 76, UCMJ, 10 U.S.C. § 876,—this court lacks jurisdiction to address or grant Petitioner's request for extraordinary relief. We note that as of 4 June 2018 this petition was docketed with this court, Respondent answered the petition on 21 June 2018, and Petitioner replied on 27 July 2018—all before Petitioner's case was final under Article 76, UCMJ. We decline to dismiss the petition on either of these jurisdictional grounds and instead deny the petition on the merits.

"The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Loving v. United States,* 62 M.J. 235, 246 (C.A.A.F. 2005)). "However, the Act does not enlarge our jurisdiction, and the writ must be in aid of our existing statutory jurisdiction." *Id.* (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999)). "The courts of criminal appeals [(CCAs)] are courts of limited jurisdiction, defined entirely by statute." *United States v. Arness*, 74 M.J. 441, 442 (C.A.A.F. 2015) (citation omitted). Thus to determine whether we have authority to grant this extraordinary writ, we must determine whether the matter of GCT is within our existing statutory jurisdiction under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

The scope and meaning of Article 66(c), UCMJ, is a matter of statutory interpretation, which, as a question of law, is reviewed de novo. *See United States v. Schloff,* 74 M.J. 312, 313 (C.A.A.F. 2015) (citations omitted). Article 66(c), UCMJ, establishes the jurisdiction of a CCA as follows:

> In a case referred to it, the [CCA] may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

10 U.S.C. § 866(c).

The CAAF has recognized that the calculation of good time credit is primarily a matter for confinement officials. In *United States v. Spaustat*, where the parties agreed the appellant was entitled to five days of credit per month, but disagreed as to how it should be computed, CAAF stated:

> We need not resolve the disagreements about the computation of good time. The UCMJ and the Manual for Courts-Martial make no provision for good time credit. The responsibility for determining how much good time credit, if any, will be awarded is an administrative responsibility, vested in the commander of the confinement facility.

57 M.J. 256, 263 (C.A.A.F. 2002) (citations omitted).

The CAAF further explained "[j]udicial review of disputes about good time credit occurs only upon application for an extraordinary writ, not on direct review of the sentence." *Id.* (citations omitted).

In *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007), an appellant challenged the authority of the DoD to establish the Mandatory Supervised Release program wherein he was required to participate in the program during the time from his MRD until his maximum release date. In deciding that case, the CAAF noted that "[o]n direct appeal, the scope of our review does not extend to supervision of all aspects of the confinement and release process." *Id.* at 264 (citing *United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000)). The CAAF further explained:

> Our review of post-trial confinement and release conditions on direct appeal is limited to the impact of such conditions on the findings and the sentence. Accordingly, our review in the present appeal focuses on whether the post-trial conditions at issue: (1) constituted cruel or unusual punishment or otherwise violated an express prohibition in the UCMJ; (2) *unlawfully increased Appellant's punishment*; or (3) rendered his guilty plea improvident.

*Id.* (emphasis added) (citations omitted); *see also United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001) (a CCA has the "authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials . . . ." (citation omitted)).

Applying the narrow framework of *Pena*, we note Petitioner has not asserted the calculation of GCT in his case constitutes cruel or unusual punishment or a violation of an express prohibition of the UCMJ. Further, Petitioner pleaded not guilty so the providence of a guilty plea is not at issue. Petitioner, however, framing the GCT calculation as a violation of the *Ex Post Facto* Clause, has raised an issue as to whether the GCT credit is being calculated in a manner that has *unlawfully increased* Petitioner's punishment.

Were this petition merely about whether or not prison officials had abused their discretion in denying Petitioner some amount of GCT credit due to their determination that Petitioner had violated confinement rules, for example, we might well agree with Respondent that such a dispute would lie outside of our jurisdiction. However, as the gravamen of this petition is that Petitioner's MRD of 1 January 2026 was wrongly determined by prison officials and that the determination adds 1020 days to the total number of days of confinement to be served by Petitioner, we conclude that we have the authority to review whether Petitioner's approved sentence to confinement is being unlawfully increased.

## B. Writ of Mandamus

Petitioner seeks relief through a writ of mandamus. A writ of mandamus is used, *inter alia*, "to compel [officers and commanders] to exercise [their]

authority when it is [their] duty to do so." *Dew v. United States*, 48 M.J. 639, 648 (A. Ct. Crim. App. 1998) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). To prevail on a writ of mandamus, the petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court*, 542 U.S. 367, 380–381 (2004)). The Respondent has not raised failure to exhaust as a reason to deny the petition. We are satisfied that Petitioner has exhausted his administrative options and has sufficiently shown there is no other adequate means to attain relief.[3] Whether Petitioner's right to issuance of the writ is clear and indisputable and the writ is appropriate under the circumstances depends on whether a violation of the *Ex Post Facto* Clause occurred.

### C. Ex Post Facto

The *Ex Post Facto* Clause provides: "No . . . ex post facto Law shall be passed." U.S. CONST. art I, § 9, cl. 3. "The *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (footnotes omitted) (citations and internal quotation marks omitted).

In *Weaver*, the Supreme Court addressed post-sentencing changes to formulas for calculating "gain time" confinement credit and found that such changes were unconstitutional as an *ex post facto* law when applied to that petitioner, whose crime was committed before the statute was enacted. *Id.* at 28–36. In finding a violation, the Court noted "two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29 (footnotes omitted) (citations omitted).

---

[3] We do not mean to infer that this court is Petitioner's only option for relief. The Supreme Court has stated that the federal district courts have jurisdiction over habeas corpus petitioners who are imprisoned as a result of court-martial convictions: "The federal civil courts have jurisdiction over such applications. By statute, Congress has charged them with the exercise of that power." *Burns v. Wilson*, 346 U.S. 137, 139 (1953) (footnote omitted).

The linchpin of Petitioner's claim is that the application of GCT credits to his sentence to confinement at a rate of five days per month is retrospective. Petitioner puts forth a multi-faceted argument to advance this claim. First, Petitioner argues that Congress specifically delegated authority to regulate the confinement of military prisoners, to include prescribing policy for the administration of GCT, to the Secretaries of the Armed Forces, not the Secretary of Defense (SECDEF), and therefore asserts the 2004 DTMs were effectively *ultra vires* and *void ab initio*. Building on the conclusion that Air Force policy regarding GCT was the exclusive province of the Air Force, Petitioner argues that the Air Force rules in effect on 10 June 2005, the time of his earliest offense, determine Petitioner's GCT. As of 10 June 2005, AFI 31–205, dated 7 April 2004, was in force and implemented both DoDI 1325.7 and AFJI 31–215, both of which included a provision awarding GCT at a rate of ten days per month as of the issuance date of AFI 31–205.

Petitioner argues that this rate of ten days per month could only be changed by the Air Force, not by the DTMs. Thus, according to Petitioner, GCT at a rate of ten days per month should be applied to his sentence—the rate in effect at the time of his earliest offense and the date of his adjudged sentence. Petitioner asserts his GCT is instead being calculated using AFI 31–105, dated 15 June 2015, and that this violates the *Ex Post Facto* Clause as applied to him. Petitioner argues in the alternative that the 2004 DTMs, even if controlling, are facially unconstitutional in violation of the *Ex Post Facto* Clause.[4]

Petitioner's arguments, although not identical, bear a striking resemblance to ones made by the petitioner in *Valois v. Commandant, USDB—Fort Leavenworth*, No. 13-3029-KHV, 2015 U.S. Dist. LEXIS 137046 (D. Kan. 2015). Like Petitioner, Valois was court-martialed by the Air Force, convicted, received a lengthy sentence to confinement, and transferred to the USDB to serve his sentence. *Id.* at *2–4. Valois' offenses, like those of Petitioner, occurred after the DTMs were in effect. *Id.* Valois filed a pro se petition for a writ of habeas corpus with the United States District Court for the District of Kansas challenging the amount of GCT that would be administratively deducted from his sentence. *Id.* at *1. Valois, like Petitioner, contended he was entitled to GCT credit of ten days rather than five days per month. *Id.* at *3–

---

[4] We have considered and reject this argument, which neither requires additional analysis nor warrants relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987). ("[W]e are aware of no requirement of law that appellate courts in general or a court of military review in particular must articulate its reasoning on every issue raised by counsel." (citation omitted)).

4. Specifically, Valois also contended that the Secretary of the Air Force (SE-CAF) had the exclusive authority to determine the award of GCT, did so, and that earlier Air Force publications indicating a rate of ten days per month controlled in his case. *Id.* Valois argued that later amendments or modifications to those Air Force publications, specifically the 2004 DTMs, were either invalid or had expired. *Id.* After an exhaustive trek through what the District Court described as a "military labyrinth of regulations" and application of the deferential framework provided by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984),[5] to its review of the DoD and Air Force regulations at issue, the District Court reached a succinct conclusion:

> In sum, the military's view that the 2004 DTM is still valid is a reasonable interpretation by the DoD within its statutory authority to administer military correctional facilities. Since this interpretation is not clearly erroneous or arbitrary, this Court finds that the 2004 DTM and the Air Force's deference to DoDI 1325.7, now DoDI 1325.07, remains valid and that any potential GCT for Valois is limited to five days per month.

*Valois*, 2015 U.S. Dist. LEXIS 137046, at *7, *27.

We are persuaded by the analysis underpinning the District Court's conclusions that: (1) the 2004 DTMs directing that GCT would "be awarded at a rate of 5 days for each month of confinement . . . regardless of sentence or multiple sentence length," remained in full force until superseded in March 2013 when DoDI 1325.07 was issued and incorporated the rule; (2) the Air

---

[5] In *Chevron*, the Supreme Court stated:

> The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress. If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

467 U.S. at 843–44 (alteration in original) (footnotes omitted) (internal quotation omitted).

Force's deference[6] to the DoD publications remained valid; and (3) any potential GCT for Valois was limited to five days per month.

In reaching its conclusions regarding the enduring validity[7] and applicability of the 2004 DTMs to the Air Force, the District Court found no statutory basis to conclude that GCT policy was or is expressly reserved to the Service Secretaries and that existing statutes did "not prohibit the DoD from establishing superior corrections policy" which the component service would be required to implement. *Id.* at *18–19.

In order to avoid the application of the DTMs to his case, Petitioner asserts that the authority regarding the establishment, organization, and administration of military correctional facilities and parole has been expressly reserved by statute to the individual Service Secretaries and not the SECDEF. Thus, Petitioner argues, the statutory authority to establish GCT rules for Air Force offenders belongs solely to the SECAF, and therefore, the DTM changes, without timely action taken by the SECAF to adopt them, do not apply to him. We disagree.

The statutory provisions cited by Petitioner do not directly address GCT.[8] Further, even assuming GCT were directly addressed, the statutes cited provide only permissive authorities and do not expressly reserve the authorities to a Service Secretary. The provisions cited by Petitioner must be interpreted in light of the whole of the statute. In pertinent part, we note that the SECDEF "is the principal assistant to the President in all matters relating to the Department of Defense" and "[s]ubject to the direction of the President . . . he has authority, direction, and control over the Department of Defense." 10 U.S.C. § 113(b). Unless preempted by the President, the SECDEF has plena-

---

[6] The District Court characterized the Air Force's adherence to the DTMs as "deference." *Valois*, 2015 U.S. Dist. LEXIS 137046, at *27. We unequivocally state that the Air Force was obliged to follow the DTMs.

[7] Although not raised by Petitioner, we note that *Valois* also addressed whether or not the DTMs were continuously in effect because they were not incorporated into a DoD issuance within 180 days as required by DoD policy. *Id.* at *25–26. The District Court concluded "[t]he military's regulatory scheme did not void DTMs after 180 days. Rather, as a matter of administrative procedure, it established a policy that DTMs be incorporated into regulations to assist in internally updating DoD issuances." *Id.* at *26. We agree.

[8] "The Secretaries concerned may provide for the establishment of such military correctional facilities as are necessary for the confinement of offenders . . . ." 10 U.S.C. § 951(a). The "Secretary concerned may provide a system of parole for offenders . . . ." 10 U.S.C. § 952(a).

ry authority over all DoD matters. While the statutes cited by Petitioner do provide express authority to individual Service Secretaries, they do not divest the SECDEF of plenary authority over the DoD. "Subject to the authority, direction, and control of the Secretary of Defense . . . the Secretary of the Air Force is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Air Force . . . ." 10 U.S.C. § 8013(b). As stated in *Valois,* given the statutory hierarchy defining the relationship between the Air Force and the DoD, "as a matter of law, the Air Force is obligated to follow the policies and procedures of the DoD." *Valois*, 2015 U.S. Dist. LEXIS 137046, at *18.

When the 2004 DTMs changed the calculation of GCT from ten days to five days per month effective 1 October 2004, the change applied to the Air Force. On 10 June 2005, the earliest date of Petitioner's offenses, and to the present date, DoD and Air Force policy was and is that GCT "is awarded at a rate of 5 days for each month of confinement . . . regardless of sentence or multiple sentence length." This rule change was not applied retrospectively to Petitioner and thus did not violate the *Ex Post Facto* Clause. Petitioner has failed to show the right to issuance of the writ is clear and indisputable and appropriate under the circumstances.

## III. CONCLUSION

Accordingly, the petition for extraordinary relief in the nature of a writ of mandamus is hereby **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court